IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KELLEY TROY COOLEY,** )<br>    **Plaintiff,** )<br> )<br>    v. )<br> )<br>**COUNTY EXECUTIVE MARK** )<br>**DIVECCHIO, et al.,** )<br>    **Defendants.** ) | C.A. No. 06-178 Erie |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that Defendant Erie County's motion for summary judgment [Document # 116] be granted.

**II.   REPORT**

**A.    Relevant Procedural History**

Plaintiff Kelly Troy Cooley, a prisoner presently incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania, originally brought this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983 against Defendants County Executive Mark DiVecchio ("DiVecchio") and Erie County, Pennsylvania ("Erie County"). In his *pro se* complaint, and amendments thereto, Plaintiff has alleged that Defendants created a policy, practice or custom of imposing excessive bail in violation of his Eighth Amendment rights, which has "capriciously caus[ed] him to be wrongfully imprisoned, and forced to remain imprisoned during pretrial and trial proceedings" on four different occasions: from August 20, 2004 to December 8, 2004; from April 20, 2005 to May 27, 2005; from December 4, 2005 to December 14, 2005; and from April 24, 2006 to March 2007. (See Document # 62, Plaintiff's opposition brief, at pp. 2-3). In addition, Plaintiff claims that the alleged excessive bail policy constitutes "racial profiling against blacks in Erie County," which the Court has construed as an equal protection claim

under the Fourteenth Amendment. As relief for his claims, Plaintiff sought monetary damages, and injunctive and declaratory relief.

On December 6, 2007, Defendant Erie County filed a motion to dismiss Plaintiff's claims against it based upon Eleventh Amendment immunity [Document # 50], while Defendant DiVecchio filed a motion for summary judgment on January 23, 2008, seeking dismissal of Plaintiff's claims against him as a matter of law [Document # 56]. On April 18, 2008, this Court issued a Report and Recommendation recommending that Defendant Erie County's motion to dismiss be denied, and that Defendant DiVecchio's motion for summary judgment be granted. [Document # 75]. This Court further recommended that Plaintiff's claims for declaratory and injunctive relief be dismissed because Plaintiff lacked standing to obtain such relief.[1] By Memorandum Order dated July 15, 2008, District Judge Maurice B. Cohill adopted this Court's Report and Recommendation. [Document # 86]. Accordingly, Defendant Divecchio was dismissed from this case, and Plaintiff's clams for declaratory and injunctive relief were also dismissed; however, Plaintiff's Eighth Amendment and equal protection claims for monetary damages against Defendant Erie County were allowed to proceed.

The parties have since conducted discovery, and Defendant Erie County has now filed a motion for summary judgment [Document # 116], seeking the entry of judgment in its favor, as a matter of law. A response to Defendant's motion, and a supplement thereto, have been filed by Plaintiff. [Document ## 122, 123]. This matter is now ripe for consideration

**B.     Relevant Factual History**

On August 20, 2004, Plaintiff was charged with committing multiple felony and misdemeanor offenses, including Burglary, Rape, Criminal Attempt and Unlawful Restraint, for

---

[1] Plaintiff sought declaratory relief, in the form of an order declaring the unconstitutionality of Erie County's alleged excessive bail policy, and injunctive relief, in the form of an order eliminating the use of excessive bail "in future criminal cases widespread." (Document # 25, Second Amended Complaint, at ¶ 13). This Court concluded that, to grant such relief, "one would have to assume that Plaintiff is likely to be arrested and charged with additional criminal charges in the immediate future, for which bail would likely be set, pending trial. Such a finding is speculative and not "sufficiently real and immediate to show an existing controversy." (Document # 75 at pp. 8-9).

which he was detained in the Erie County Prison, subject to payment of a $75,000 cash bond (Document # 3, Complaint, at Section IV.C.1). This bond was subsequently reduced to $50,000 cash. (Id. at Section IV.C.4). After a jury trial, Plaintiff was ultimately found not guilty of all charges on December 7, 2004, and was released from Erie County Prison. (Id.). Because Plaintiff was unable to afford either the original or reduced cash bond, he remained in prison from the date of his arrest to the date of his release after trial.

On April 20, 2005, Plaintiff was arrested and charged with Rape "and other serious offenses," for which he was again detained in Erie County Prison, subject to payment of a $75,000 cash bond, which he could not afford. (Document # 3, Complaint, at Section IV.C.2). These charges were subsequently dismissed against him at his preliminary hearing, and Plaintiff was released from prison on May 27, 2005. (Id.).

On December 4, 2005, Plaintiff was arrested and charged with committing Aggravated Assault and "other crimes," and was placed in pretrial detention at the Erie County Prison, subject to a $ 25,000 cash bond, which Plaintiff was unable to pay. (Document # 3, Complaint, at Section IV.C.3). These charges were dropped at Plaintiff's preliminary hearing and Plaintiff was released from prison on December 14, 2005. (Id.).

On or about April 24, 2006, Plaintiff was charged with committing Robbery, Retail Theft, Receiving Stolen Property, Harassment, and Disorderly Conduct, and was detained in Erie County Prison subject to a $ 25,000 cash bond. (Document #16, Exhibits A and J). Plaintiff claims that he was held in pretrial detention until March 2007, because he was unable to pay the required cash bond. (Document # 62 at p. 3).

### C.   Standards of Review
#### 1.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine as to any material fact and that the moving party is entitled to a judgment as matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of

showing the basis for its motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.  Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(non-movant must present affirmative evidence-more than a scintilla but less than a preponderance-to support his claims).  When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant.  Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002) quoting Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000).  Nonetheless, a party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements, rather, "the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial."  In re Ikon Office Solutions, 277 F.3d 658, 666 (3d Cir. 2002).

On a motion for summary judgment, the district court may not weigh the credibility or weight of the evidence, rather, it may only determine the existence of a triable issue of fact.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  A genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"  Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir.

1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**D.     Discussion**

**1.     Eighth Amendment Claim**

"The Eighth Amendment to the Constitution ... provides that 'excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" Baze v. Rees, ___ U.S. ___, 128 S.Ct. 1520, 1529 (2008). Although the Excessive Bail Clause does not guarantee a right to bail, it does guarantee that any bail imposed "not be 'excessive' in light of the perceived evil." United States v. Salerno, 481 U.S. 739, 754 (1987).

Here, Plaintiff argues that Defendant has "created a 'wide spread' practice, or custom, policy, and being deliberately indifferent for imposing excessive bails for Plaintiff in Erie County, Pennsylvania, compared to white citizens in Erie County, PA, who are similarly situated in criminal activity, and subjected to bail bonding before white magisterial judges in Erie County, Pennsylvania." (Document # 122, Plaintiff's objections to Defendant's motion, at pp. 2-3). According to Plaintiff, this alleged policy, practice or custom of imposing excessive bail has "capriciously caus[ed] him to be wrongfully imprisoned, and forced to remain imprisoned during pretrial and trial proceedings" on four different occasions: from August 20, 2004 to December 8, 2004; from April 20, 2005 to May 27, 2005; from December 4, 2005 to December 14, 2005; and from April 24, 2006 to March 2007. (See Document # 62, Plaintiff's opposition brief, at pp. 2-3).

In particular, Plaintiff has argued that "the Erie County District Justices set bail in the amounts Plaintiff could not afford." (Document # 62 at p. 7). However, "a detainee's inability to post bail does not inherently make bail excessive." Campbell v. Johnson, 2008 WL 490592 at

5

* 6 (N.D.Fla. Feb. 20, 2008), citing United States v. McConnell, 842 F.2d 105, 107 (5th Cir. 1978)("bail setting is not constitutionally excessive merely because a defendant is financially unable to satisfy the requirement"); Pugh v. Rainwater, 572 F.2d 1053, 1069 (5th Cir. 1978)("people may not be denied reasonable bail in bailable cases, but they are not entitled to bail on their own terms.... If reasonable bail is set and the defendant cannot make it the Constitution does not command that he shall be released").

In order to succeed on his Eighth Amendment claim, Plaintiff must show that the bail that was imposed upon him was excessive in light of the valid interests the state sought to protect by offering bail. Salerno, 481 U.S. at 754. For instance, "when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more." Id. In this case, neither party has submitted any evidence indicating what interests the state sought to protect by setting bail in Plaintiff's various criminal cases. As a result, this Court is unable to determine whether such bail was, or could be considered, excessive, and, therefore, a genuine issue of material fact continues to exist as to whether the bail set for Plaintiff in his criminal cases violated the Eighth Amendment's Excessive Bail Clause.

Nonetheless, this finding does not end the inquiry in this matter, because the crux of Plaintiff's claim is that Defendant has created and maintained a policy, practice, or custom of imposing excessive bail against minority defendants, which allegedly caused Plaintiff to be wrongfully imprisoned. Thus, assuming Plaintiff can prove that the bail imposed in his criminal cases was excessive, the question still remains whether the excessive bail was imposed under a policy, practice, or custom effectuated by Defendant, such that Defendant could be found liable for violating Plaintiff's Eighth Amendment rights. "In order to answer this question, the Court must examine that decision-making process for the setting of bail and determine whether that process, if routinely followed and resulting in excessive bail amounts in violation of the Eighth Amendment, constituted a policy, practice or custom." Rojas v. City of New Brunswick, 2008 WL 2355535 at * 23 (D.N.J. June 4, 2008).

In Rojas, the New Jersey District Court discussed and applied the reasoning adopted by

the Third Circuit Court in Anela v. City of Wildwood, 790 F.2d 1063 (3d Cir. 1986). In Anela, the city of Wildwood, New Jersey, had admittedly adopted a policy of following a "Cash Bail Schedule" established by a municipal judge, which ordered the detention of persons overnight for minor offenses without issuing a summons, in contravention of a summons procedure that was mandated by the state criminal practice rules. Anela, 790 F.2d at 1066-67. As a result, the Anela Court concluded that the city's adoption of the contravening policy exposed the city to liability under § 1983 for unlawfully detaining the plaintiffs, because an implied nexus existed between the policy and the alleged violation of the plaintiff's Eighth Amendment rights. Id at 1067.[2]

Here, Defendant argues that "there is simply no evidence that a jury could rely upon to reach a conclusion that Erie County promulgated any type of policy or was involved in any type of conspiracy to set bail at a higher amount for minority criminal defendants than non-minority criminal defendants, which violated plaintiff's Constitutional rights." (Document # 116, Defendant's motion for summary judgment, at ¶ 5). The Court agrees.

The only documentary evidence offered by Plaintiff in support of his argument that Defendant has adopted a policy, practice, or custom of imposing excessive bail upon minority defendants is a copy of a letter he received from Tim Lucas, Esquire, dated January 17, 2008, in which Attorney Lucas makes the following unsworn statement: "[a]s both a former prosecutor and a criminal defense lawyer it has always been my experience that District Justices (White) set abnormally high bonds for Black defendants but do not do so if the defendant is White." (Exhibit E attached to Document # 122, Plaintiff's objections to Defendant's motion). However, Attorney Lucas's observation, even if accepted as true, does nothing to establish that such "abnormally high bonds for Black defendants" have allegedly been set by District Justices pursuant to a policy, practice, or custom established by Defendant. In fact, unlike the city of

---

[2] The Rojas court noted that "[i]n Anela, the municipal court's repugnant bail schedule was attributable to [the city of] Wildwood because of Wildwood's routine compliance with that policy. That was enough to imply a nexus." Rojas, 2008 WL 2355535 at * 25.

Wildwood in <u>Anela</u>, Defendant has denied the existence of any such policy. (<u>See</u> Defendant's Responses to Plaintiff's Request for Production of Documents attached as Exhibit B to Document # 116).

The only other evidence cited by Plaintiff in his attempt to prove the existence of a policy is his own experience of witnessing two white female defendants being released on bond on the same day he and another black defendant were refused bond and sent back to prison. (<u>See</u> Plaintiff's deposition transcript attached as Exhibit A to Document # 116, at pp. 21-24). Once again, this evidence, even if accepted as true, fails to offer proof of a municipal policy to impose excessive bail upon minority defendants.

Simply stated, Plaintiff has failed to present any evidence upon which a reasonable juror could conclude that he was imposed excessive bail in violation of his Eighth Amendment rights due to the existence of an aberrant policy, practice or custom created and maintained by Defendant. Accordingly, summary judgment should be granted in favor of Defendant with regard to Plaintiff's Eighth Amendment claim.

### 2.     Equal Protection Claim

Plaintiff makes the broad assertion that "blacks receive higher bails in Erie. More than whites." (Document # 62 at p. 11). In addition, Plaintiff claims that Defendant's alleged excessive bail policy constitutes "racial profiling against blacks in Erie County." These allegations have been construed by this Court as an equal protection claim under the Fourteenth Amendment. As with his Eighth Amendment claim, however, Plaintiff's equal protection claim is dependent upon his ability to prove the existence of a policy, practice or custom of imposing excessive bail implemented by Defendant. Since this Court has already found that Plaintiff is unable to prove the existence of such a policy, Defendant should be granted summary judgment with regard to Plaintiff's equal protection claim, as well.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's motion for summary judgment [Document # 116] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  November 12, 2009

cc:     The Honorable Maurice B. Cohill
        United States District Judge